here before the court in appeal of the administrative decision that came down from the emergency protection board and where up where the decision of the agency to terminate or to remove Mr. Loretta from federal service was upheld. We feel that and we suggested the court that there were several errors in that decision and the prior taking each account taking each charge as well as the emergency protection board's argument into account. I would like to go over some of the areas that we think and we suggest that the judge may may I get a glass of water first I'm sorry may I get some water please thank you. So The first charge that Mr. Rivetta had to face was the unauthorized, unauthorized outside employment. What Mr. Rivetta did was basically, before working for the Department of Homeland Security, he was working for American Airlines in 1995. There were openings that were, that he found out about with Department of, at that time it was Customs and Border Patrol. He applied, and in 2001 he qualified and was hired. After an extensive background investigation, he was, he was hired by the agency. He reported to the agency in January 2001 and immediately went to take the federal, or the formal training with the, at the Federal Law Enforcement Training Center in Brunswick, Georgia. While at the Federal Law Enforcement Training Center, he was hurt. He suffered an on-the-job injury. The injury basically made him 50% incapable of doing his job, and the medical reports had been submitted. So he was sent home by the agency to recover. He lived around Dallas, Texas. He went to Dallas, he went home, and at the time that he had not left, or he had not resigned from American Airlines, he called in and told them, I'm back in Dallas. But he did not go back to work. Physically, he could not go back to work. They wanted him to go back to work, so what he basically did was pick up the phone, call the other union members, and they went to work for him. The American Airlines witness, Mr. James Casey, calls it personal leave of absence, PLOA. While on leave of absence, Mr. Rivera was in fact collecting continuation of pay, and he also collected workers' compensation after that, a couple of weeks. Let me ask you, sorry to interrupt, but at some point while he was having this employment with both American Airlines and the agency, didn't he get riffed from American Airlines? Riffed. And then thereafter, they rehired him? Yes, ma'am. So even if what you're saying were true, in other words, that he didn't have this obligation to the first instance because they kind of knew about it, yada, yada. I don't understand why he at least didn't think that when he was rehired by American Airlines, while he was at the time already in employment of DHS, that he wouldn't have had to disclose at that time his outside employment. Because he never went back to work. During the riff period, he was still on personal leave of absence. But after the riff period? After the riff period, they hired him automatically because of his seniority. Right, and he was hired back with American Airlines, and he never disclosed. I mean, you recognize there are requirements that you have to disclose outside employment to the agency. But he did disclose it, Your Honor. When? When he turned in his I-171. He told them from the beginning, I'm working at American Airlines. When they report, when the agents report to the Federal Law Enforcement Training Center, they're basically told, if you don't pass the Federal Law Enforcement, if you don't pass the formal training, you don't get hired. But, and you don't think inherent there's some assumption that someone is going to discontinue their other employment if they get this job? Not if you're told that it's not certain. Not if you're told that if you don't pass... But at some point, he got the job. Well, the point is that he has union rights. And he was able to maintain those union rights while he was employed with the DHS. I'm sorry, at that time it was Customs and Border Patrol. Okay. And the union rights obviate the need for him to disclose outside employment? The union rights give him a right that he exercised. And that right was? That right was to continue having a position. He didn't receive pay. What he did was receive the position. He was able to freeze the position for him. Well, he did receive pay from... Someone received pay from American Airlines, right? No, we're talking about the period from March. Okay, after that. We're talking about a period. But at some point, he received pay from American Airlines. Only for that period that's been brought out. The date of injury to the time in June. That's the only time he received pay. And thereafter, he received benefits? He continued to receive benefits? No, the only benefit that he received was the flying ability. The ability to fly, or what do they call that? The courtesies that they fly without having to pay for a flight. And he received no other benefit. And what was the period where other people were doing work that he had been assigned? It was that period between the date of injury and the day he went back to work. I think it's January, July 9th, 2001. 2002, I'm sorry. 2002? 2002. Yes, ma'am. Only for that period. That's the period that's been brought in question, as far as Officer Jimenez claiming that Mr. Rivera had been less than truthful on a federal examination. That was reason number three for the removal. What about the falsification of document charge? The falsification of document? There's no dispute on the facts, right? There's no dispute with respect to the facts here, correct? Yes, there are, ma'am. He falsified a letter for the agency. Which agency, Your Honor? The Immigration Naturalization Service. That was the letterhead, correct? It did not exist. IMS, United States Immigration Naturalization Service, did not exist after March 1st, 2003. That's okay, but even assuming that's true, why does that mitigate the falsification? Well, because it is true, and number one, if it is true, then it is not an official document. If the agency doesn't exist, it is not an official document. Well, to carry that point further, just to make sure we're all on the same page here, there's no dispute, I take it, that the document was not genuine in the sense that there was a person with the name that was put on the document. That's true. And the information was effectively fabricated, and there's no dispute, I take it, that Mr. Rivera is the person who fabricated it, correct? That's correct, Your Honor. So your defense is essentially, I don't want to disparage technical defenses, but it is a technical defense that, well, it isn't a misrepresentation because there was no such agency at the moment that that was created. Well, we're going to stick to the Blackletter Law, I'm in charge. I understand, but the answer is not that he thought that this was genuine or that it was submitted as a facsimile of a genuine document. It was fabricated. It's just that you say now, well, they should not have penalized him for that because it was on letterhead of an agency that didn't exist at that moment. Correct, Your Honor. Not only that, he never worked for the Immigration Naturalization Service, and Mr. Rivera has in fact admitted that he did fabricate the document. But if you look at the record, Mr. Rivera was a Customs and Border Patrol employee, which was under the umbrella of the United States Treasury. And then you had the INS, the Immigration Naturalization Service, which was under the umbrella of the United States Justice Department. When they merged, they both became under the umbrella of the Department of Homeland Security. So the technical defense, which you acknowledge, is what? That because they charged him with falsification of an official document, even though you concede he falsified a document for personal gain, what you say is missing here is that it wasn't an official document that he falsified. Well, it's not only that, Your Honor, it's that the agency, it was not presented to the agency by Mr. Rivera. The agency suffered no harm. And the way I read the case law was that basically if the agency charges on such a charge, it's usually because of a document that the agency has been presented and they are the ones who suffer the harm or they are the ones who are being misled. In this particular case, it is American Airlines, not the agency. This document was never presented to the agency by Mr. Rivera, nor did the agency rely on this document in any fashion. So we don't have an official document. Mr. Rivera admitted during the investigation that he initiated the document. And he never, now again, this is very technical, he did not work for INS. He worked for Customs and Border Patrol. So the document is completely false on its face. And yes, he admit authoring it, but the agency never depended on it. It was never presented to the agency and said, I need this, or I'm on leave, or I didn't come in because I was sick or something. It wasn't that type of presentation. This was a third party who presented it to the agency. Then the agency says, oh, it's fabricated. And it's an official document. Well, yes, it's fabricated, but it is not an official document. The agency is well aware of that. Well, it purported to be an official document, correct? I'm sorry? It purported to be an official document. It didn't accidentally have the letterhead Bureau of Immigration. Your client intentionally wanted to convey the message that this was coming from a government agency, right? Yeah, but not to the agency. Yes. So your view is under the law, an intent to deceive using a government document or falsifying a document so that it purports to be a government document with intent to deceive is not justifiable reason for removal if you're intending to deceive a third party and not the agency for whom you work? Well, it's the agency who charged him, Your Honor. The third party didn't charge him. But it really depends on the scope of the charge of falsification of an official document, right? In other words, if I falsify a tax document and I give it to my employee and it purports to be an official tax document, let's say a W-2 or something like that, but I've completely falsified it, then the question would be whether I have falsified an official document. And as long as that document isn't submitted to the agency, you say no, right? I think the question would be who brings you into court, who terminates you. And in this case, if your employer, if employee is saying this is a false document, there's a cause of action. But if the IRS is saying this, if the IRS, if they're saying this is a false document and it was presented to the IRS, then I would say that it is a false document by the IRS's charge. But is there any law that suggests that the agency either does not or cannot prescribe the use of its imprimatur, so to speak, with third parties? No, sir. The official falsification of an official document does not by its terms suggest the same thing to me, at least, as submission to an agency of an official document. It's falsification of the document. In other words, let me give you an example. I have a passport. Suppose I discover that my passport is about to expire and I change the date on the passport in order to get into the United Kingdom, not in order to get some benefit from the U.S. Department of State. It seems to me I've falsified an official document, haven't I, even though I'm not going to submit that to the U.S. government. If it is an official document, Your Honor, but in this particular case, we didn't have an official document. I think that we don't have an official document. I don't care what we want to say about it. After March 1, 2002, there was no Immigration Naturalization Service. It did not exist. There was no Customs and Borders Patrol. It is now Customs and Border Protection. It is now, I think it's ICE, Immigration Citizen Services or something. But the point of that, it is not an official document. Let's hear from the other side because we're using up your rebuttal time as well. I'm sorry, Your Honor. Thank you. Mr. Pease. May it please the Court. Your Honors, the decision of the Merit System Protection Board should be affirmed because the board's decision affirming the agency's actions is supported by substantial evidence and is in accordance with law. Your Honors, the agency removed Mr. Rivera from the job as a Border Patrol agent because he concurrently was employed without authorization by American Airlines. But you heard what he said. I mean, you read what he said in the briefs that the agency knew and sort of accepted that that was what was going on. Your Honor, Mr. Rivera has asserted that the agency knew that he was employed by American Airlines. And he's also asserted that the job application that you're employed by a company isn't constructive notice or any sort of notice that you in fact intend to stay employed by that company. In addition to that, if he intended to stay employed by another company, he was required to obtain authorization for any sort of outside work as controlled by the Union Collective Bargaining Agreement. And he hasn't submitted in any way that he's done so. And also, as Your Honor indicated, although I'm not certain this is in the record, what was attached to or was submitted as a supplemental appendix, the fact that he was reduced in force and then subsequently obtained employment again from American Airlines is another indication that he not only continued being employed, but was for some period not employed and then became employed again. So even if there's a reasonable reading of the requirement that only undertaking additional employment as opposed to retaining employment, it's contradictory in that sense as well. On the false documents charge, I know the MSPB found, accepted the government's argument that INS stationery was still used as an official document, et cetera. But let's assume hypothetically that that were not the case. Would there be a problem with the charge of falsification of an official document? Yes, Your Honor, because the document was still purported to be an official document. The fact that Mr. Rivera, in this case, Mr. Rivera did use a letterhead that was currently in use and in fact looked like an official document in addition to purporting to being an official document. However, had it been a document that somehow, for some technical reason, didn't look just like the letterhead that he was using. For instance, perhaps he used something that said U.S. Border Patrol on the top, but didn't say it wasn't the letterhead the U.S. Border Patrol in fact used. There's no reason to believe that it still wouldn't be attempting to be an official document intending to deceive the outside employer. Well, what if he made up some name of an agency and just made up his own stationery for an agency that didn't even exist? Like U.S. Border Police. Your Honor, it's interesting, hypothetically, Your Honor. It's certainly possible that if a document was so unbelievable or so clearly not from the agency or simply looked like something with no letterhead perhaps, looked just like a letter from Mr. Rivera, there would certainly be questions arising from that. However, the actual text of the document also was indicating, and the purpose of the document was sent in response to a question about his working for the Border Patrol, was specifically addressing and stating that he was on a duty status that he was not on with the Border Patrol. And although I believe the document doesn't specifically state Border Patrol in the text, it does indicate that he was on leave from his service. And so even if we didn't have the document that had letterhead that was still in use and even if it doesn't say Border Patrol specifically, the fact that he's sending in a response with a fictitious supervisor from Border Patrol giving misleading information does add to the aspect that it would be an official document. In this case, that's a hypothetical we don't have here. In this case, the letterhead clearly was still in use by the agency and it clearly appears to be on its face an official document. And so there's, I don't think there's any question in this regard that it's a falsification of an official document. What about the question, let's assume not though. What about the point about intent to deceive a third party versus intent to deceive the agency and whether or not the agency can charge a person with intent to deceive a third party if that were the case here? I understand your position is this. Yes, your honors. In this situation, the intent was to deceive a third party. And the only effect on the agency in a sense is the effect of employees creating false documents that are given then to public or private parties that create a problem for the agency in the sense that people who receive official documents expect to be able to rely on those that appear in that case. In this case, it was deception not of the agency directly by submitting it to the agency but deception of a private employer. And that was what was specifically charged was deception of the private employer using an official, a false official document to convey information from the agency or extensively from the agency to a private employer. The cases on this as we've described in our brief don't address the situation. And I wasn't able to find any cases in either the MSPB or in this court that specifically addressed someone creating a false official document. They then presented to someone outside of the government and then being removed or disciplined. But it's simply because the cases don't apply to it doesn't mean that the cases should be used to deceive the agency because we're in a totally different situation. The judgment law of NACL that intended to deceive as required of an employee intended to deceive an agency was specific to those facts. And the other cases like that, I don't believe we cited them all but there are a few other cases that relate to the same issue. Usually, the charge of falsification deals with someone taking an official government form that in fact is authentic and putting false information on it and submitting it to an agency. The rationale behind NACL is that when someone merely mistakenly puts down a piece of information on an official document then gives it to the agency, there should be something more. There should be an intent to in fact deceive the agency. It's not really a mistake or something to that effect. In this case, it's very clear it's not just a mistake. It's very clear that Mr. Rivera from whole cloth fabricated a document, in fact created a false supervisor and a non-existent person apparently signed it himself in that person's name. But are there not cases which deal with conduct that's outside the employment context which then forms the basis for charges of misconduct or failure to promote the efficiency of service? Yes. I mean it's outside so it's some employee of the postal service and they do something outside of the employment context and then the agency that's clearly improper but vis-a-vis a third party that has nothing to do with the postal service per se and that they can be charged with or discharged because that conduct leads supervisors to question their veracity, blah, blah, blah. Yes, Your Honor. I don't have any specific cases at the moment. But for instance, one type of case is drug testing where someone has used drugs outside of the service. And so something that clearly may have an effect upon their performance of duties. In this case- But here the agency didn't say that, right? I mean they didn't say we can no longer trust him because of this conduct, et cetera. That's not exactly true, Your Honor. In the form that was addressing the Douglas factors, the removing official in fact indicated on their integrity a number of times. And I think that that's very fairly interpreted as- But that's on the form. But one of his arguments is that the Douglas factors were not analyzed and applied. Yes, Your Honor. That's one of the arguments. However, the official that created that document in fact testified that it was, they were, one, that the factors were considered. And two, that that form was created prior to the actual removal decision or in concert with the actual removal decision. They didn't check and say these are the factors that I considered? They checked on the form that actually lists a number of factors. On the form they checked whether those were aggravating or mitigating factors. And within the form for each particular factor, there was an option of writing additional comments. And with regard to some of those comments, they noted integrity or raises issues of integrity. And so the issue of integrity or trust of the employee clearly were at issue here and were considered by the deciding official. And the board found that, right? And the board found that, yes, that that form was, I don't recall if the board made a specific finding that the form was considered at that time. But the board definitely decided that those factors were considered. It would be implicit in the decision if they didn't specifically mention that form. But Mr. Rivera's claim that that form wasn't considered isn't supported by any evidence in the record. The evidence that he relies on is the form itself wasn't dated. The deciding official in fact remarked or admitted that it wasn't dated. And in fact, the stamp that was on it was receipt by another part of the agency. But it wasn't a stamp that stamped the date that it was completed. And the deciding official testified to that. There's no evidence to the contrary except for simply allegations or by legal arguments, I should say, that that wouldn't be sufficient for some reason. Your Honor, the only other, in case Mr. Tierney reaches this argument, the only other argument that was brought up was a misrepresentation claim during the official investigation. And both in our response brief, we cited Lachance versus Erickson, which makes clear by the investigation. Mr. Tijerina cites Erickson, King versus Erickson, which in fact was the case that was reversed by the Supreme Court case we cited. So it doesn't provide any additional support for his position that it can't be charged. Any more questions? Okay. Thank you, Mr. Peace. Mr. Tijerina. Thank you, Your Honor. To address some of the questions, Your Honor, if we look at the respondent's supplement with his exhibits, and I go to Exhibit 25, you'll see that the Douglas factors are, in fact, part of the record. However, the only date cited on that is October 30, 2003, well after this case was ever brought into effect. Furthermore, the official who signed it, Mr. Garza, did not date it. So the date is a question. The judge at length, the administrative judge, made a point to mention the integrity of each enforcement officer that works for the federal government. Well, it's also the integrity of the agency. That has to be scrutinized sometimes. And in this particular case, there isn't anything on the record that shows that the Douglas factors were properly applied at the time that Mr. Rivera was, in fact, charged. The only document they have is the date, October 3, 2003. But those are findings. The findings of fact are those that we defer to when they're made below correct. And it appears from the AJ's decision that the AJ credited the agency's view that they applied them. Yes, ma'am. And we're on the record as objecting to them because of the dates. We are on the record. And the same goes for Mr. Jimenez's final charge. I'm sorry, the agency's final charge. And that was misrepresentation, falsification, concealment of a material fact during an official investigation. If we go back and we review the actual investigation, along with the evidence that was presented, we're going to find that the real evidence, the so-called written evidence, contradicts what Mr. Casey testified to. The judge gave a great deal of credibility to Mr. Casey. Are we required, are we not, to defer to those credibility determinations below? I'm sorry, Your Honor. We're required to show some deference to credibility determinations that are made by the court below. We would expect them to be supported by their own written evidence. And this is not the case before us. For example, Mr. Casey did not terminate Mr. Rivera. Mr. Rivera resigned. The record is clear. He resigned. It was accepted. He did not terminate him. He testified he terminated him. He submitted a payroll document that had no identifying remarks in reference to Mr. Rivera. That was objected to on the record. There was no authentication of that document. When we received it, we said, what is this? And they asked us, well, this is payroll. His Social Security number wasn't there. His date of birth wasn't there, nor his name. Now that I received it in brief, there is a name written on top, Jose Rivera. But the real document that's in the record does not have this identification mark. That document was never authenticated. I tried to have it suppressed, and I was overruled. So we're asking the court to analyze the third charge in reference to the written evidence that's before it. And it is not supported. So we believe that all three charges are not supported. I'm not saying that Mr. Rivera didn't admit to falsifying the document. But he was charged with falsifying an official document. It was not an official document. That's it. It's not. He was charged with not cooperating or misleading an official investigation. He did not. He answered each question. He answered it. And he answered them truthfully. He did not physically work for that company, for AA. He was charged with. Mr. Tetrino, we need to wrap it up. We're over time. Is there anything that you urgently must tell us that we haven't discussed? Yes, Your Honor. One more. That's it. And I'll leave. There is no requirement on the I-171, or the federal I-71, for him to quit his job. Nor was there a requirement from any employee that I understand when he submits his application that he's told, well, if we accept you on a probationary basis, you must quit your job. I haven't found any law to that effect. Nor have I found any document to that effect. Thank you, Your Honor. Thank you. Thank you both. The case is taken.